UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MAYNOR ESPINOZA HERNANDEZ,

                Petitioner,

v.                                                                                   Case No. 25-cv-1670-bhl

SAMUEL OLSON, et al.,

                Respondents.

## ORDER DENYING PETITION FOR HABEAS CORPUS

       Petitioner Maynor Espinoza Hernandez, who is currently detained by U.S. Immigration and Customs Enforcement (ICE) officials at the Dodge County Jail in Juneau, Wisconsin, seeks a writ of habeas corpus from this Court pursuant to 28 U.S.C. §2241. At a November 13, 2025 telephonic status conference, the parties agreed the case could be adjudicated on the papers. (ECF No. 11.) The Court also alerted the parties to its prior decision denying a habeas petition in a similar case, *Cirrus Rojas v. Olson*, No. 25-cv-1437-bhl, 2025 WL 3033967 (E.D. Wis. Oct. 30, 2025). (*Id.* at 2.) Briefing in this case is now complete, and while the Court is sympathetic to Espinoza Hernandez's position, he has not shown that he is being detained contrary to federal law. Accordingly, his petition will be denied.

## BACKGROUND

       The U.S. Border Patrol first apprehended Espinoza Henandez, a native and citizen of Honduras, almost ten years ago, on or about September 1, 2016. (ECF No. 12-1 ¶7.) At the time of his initial apprehension, Espinoza Hernandez had entered the United States without inspection and was determined to be an unaccompanied child. (*Id.*) The U.S. Border Patrol issued Espinoza Hernandez a Notice to Appear in removal proceedings the following day. (*Id.* ¶8.) Because he was an unaccompanied child, the Department of Homeland Security (DHS) transferred his custody

to the Office of Refugee Resettlement (ORR), which later released him to the custody of a family member in Wisconsin on November 16, 2016.[1] (*Id.* ¶9.)

On February 15, 2019, Espinoza Hernandez sought permission to remain in the United States by filing an application for asylum and withholding of removal. (ECF No. 1 ¶54; ECF No. 12-1 ¶10.) He participated in removal proceedings until July 19, 2021, when the proceedings were administratively closed based on DHS's decision that he was "not an enforcement priority." (ECF No. 1 ¶53; ECF No. 2 at 1.)

The government's enforcement priorities changed and, on September 25, 2025, Espinoza Hernandez was arrested by ICE while working at Maple Leaf Farms in Manitowoc, Wisconsin. (ECF No. 1 ¶51.) Espinoza Hernandez has a valid work permit, allowing him to work until September 22, 2029, and has been working as a breeding technician at Maple Leaf Farms pursuant to that authorization. (*Id.* ¶54; *see* ECF No. 2 at 12.) Since his arrest, he has been detained at the Dodge County Jail in Juneau, Wisconsin. (ECF No. 1 ¶51.)

On September 30, 2025, DHS moved to re-calendar Petitioner's removal proceedings before the immigration court in Chicago pursuant to 8 U.S.C. §1229a. (*Id.* ¶52.) Espinoza Hernandez's counsel was not served with a copy of the motion. (*Id.*; ECF No. 2 at 5.) On October 6, 2025, an immigration judge granted the motion as unopposed, and Espinoza Hernandez's counsel then received notice of the Order and the re-calendared removal proceedings. (ECF No. 1 ¶52; ECF No. 2 at 7.) There is no suggestion that Espinoza Hernandez was prejudiced by his counsel's failure to receive the initial motion.

On October 7, 2025, Espinoza Hernandez, through counsel, submitted a bond request to the immigration court. (ECF No. 1 ¶57.) At an October 29, 2025 hearing, the immigration judge denied Espinoza Hernandez's bond request, concluding that it lacked jurisdiction to consider the request based on *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). (ECF No. 12-1 ¶15; ECF No. 12-14.) According to the government, Espinoza Hernandez had a further hearing relating to his asylum application scheduled for December 8, 2025. (ECF No. 12-1 ¶16.) Neither party

---

[1] Espinoza Hernandez's petition was premised on the assertion that he was initially detained and released after being issued a Form I-220 Order of Release on Recognizance (OREC). (ECF No. 1 ¶¶8, 41.) The government disputes that Espinoza Hernandez was ever issued an OREC. (ECF No. 12 at 3.) In his reply, Espinoza Hernandez admits the assertions in his petition were incorrect and he was not released pursuant an OREC. (ECF No. 14 at 3.) Indeed, federal law prohibits the release of an unaccompanied minor on recognizance. 6 U.S.C. §279(b)(2)(B) ("In making determinations described in paragraph (1)(C), the Director of the [ORR]—shall not release . . . children upon their own recognizance.").

has updated the Court on the results of that hearing or any further developments in Espinoza Hernandez's removal proceedings. As far as the Court is aware, Espinoza Hernandez remains detained at Dodge County.

## ANALYSIS

A habeas petition under 28 U.S.C. §2241 allows persons in custody to challenge the fact or duration of their confinement. *See Preiser v. Rodriguez*, 411 U.S. 475, 489–90 (1973); *Waletzki v. Keohane*, 13 F.3d 1079, 1080 (7th Cir. 1994). The Supreme Court has recognized Section 2241 as an appropriate means for raising statutory challenges to detention orders in immigration proceedings. *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).[2]

Espinoza Hernandez seeks habeas relief under 28 U.S.C. §2241, claiming that his detention violates the Immigration and Nationality Act (INA) and the Fifth Amendment's Due Process Clause. Respondents deny that Espinoza Hernandez is being detained unlawfully and argue that because he has never been lawfully admitted into the United States, he is an "applicant for admission" under 8 U.S.C. §1225(a)(1) and his detention is mandatory under 8 U.S.C. §1225(b)(2)(A). Espinoza insists that his detention is not governed by Section 1225(b)(2)(A) but is instead controlled by 8 U.S.C. §1226(a)(2), which permits the release of some foreign nationals on bond during their removal proceedings. He points out that DHS's decision to detain him pursuant to Section 1225(b)(2)(A) is a change from decades of agency practice and argues that the government should be estopped from asserting this new interpretation. (ECF No. 1 ¶¶5–8.)

**I.  Espinoza Hernandez's Detention Does Not Violate the INA.**

Counts I and II of Espinoza Hernandez's petition allege that his detention violates the INA and related immigration regulations governing the release of detained aliens on bond. (ECF No. 1 ¶¶60–66.) The government maintains that Espinoza Hernandez is properly being detained under Section 1225(b)(2)(A), which, it contends, requires his detention pending completion of his removal proceedings. (ECF No. 12 at 9–10.) Espinoza Hernandez argues that the government's interpretation of Section 1225 is incorrect and insists his detention is properly governed by Section 1226. He argues for a construction that limits application of Section 1225 to aliens taken into custody at the border and contends that because he was living in the United States, albeit without

---

[2] While Congress has enacted multiple jurisdictional bars to a federal court's adjudication of matters entrusted to the immigration court, including limits on habeas relief, under current caselaw these barriers do not appear to prevent this Court's consideration of the issues arising here. *See Cirrus Rojas*, 2025 WL 3033967, at *4.

authorization, when arrested, he is entitled to a bond hearing with the possibility of being released under Section 1226 while his immigration court proceedings are resolved. (ECF No. 1 ¶¶64–66.)

### A. The Government's Statutory Argument is More Consistent with the INA.

The Court addressed the statutory construction issues underlying the parties' disputed positions in *Cirrus Rojas*, 2025 WL 3033967, at *5–10. In *Cirrus Rojas*, the Court walked through the plain language of all subsections of both Sections 1225 and 1226 and explained that, while the statutory language could be clearer, the government's position, which mirrors its arguments here, was more consistent with the statutory text. *Id.* at *8.

As explained in *Cirrus Rojas*, Section 1225 is entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing" and governs the inspection, detention, and removal of aliens seeking admission into the United States. Section 1225(a)(1) begins by identifying those aliens who are to be "treated as applicants for admission." The text provides:

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

8 U.S.C. §1225(a)(1). The remaining subsections of 1225(a) address the treatment of stowaways, authorize immigration officers to inspect and take statements under oath from applicants for admission, and provide applicants the right to withdraw their applications and depart from the country immediately. 8 U.S.C. §1225(a)(2)–(5).

Section 1225(b) is entitled "Inspection of applicants for admission." It mandates expedited removal proceedings for certain types of applicants for admission. Generally, if an immigration officer finds that an alien is inadmissible because of fraud or due to documentation issues, the official must order the alien removed without further hearing unless the alien indicates an intention to apply for asylum or expresses fear of persecution. *See* 8 U.S.C. §1225(b)(1)(A)(i) & (ii). The statute also authorizes the Attorney General to designate certain other aliens for similar expedited removal so long as those aliens have not been previously admitted and have not shown they were continuously physically present in the United States for the preceding two years. *See* Section 1225(b)(1)(A)(iii). In Section 1225(b)(1)(F), Congress carved out an exception to this expedited

removal process for citizens of a "country in the Western Hemisphere with whose government the United States does not have full diplomatic relations and who arrives by aircraft at a port of entry."

Section 1225(b)(2)(A) then prescribes specific detention requirements. "[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding" under 8 U.S.C. §1229a. 8 U.S.C. §1225(b)(2)(A). The statute also allows the Attorney General to return aliens who arrive on land from a contiguous foreign territory to that foreign territory pending removal proceedings. 8 U.S.C. §1225(b)(2)(C). The balance of Section 1225 is largely procedural, describing the process for expedited removal, review by the Attorney General, the alien's right to submit information, and the authority of immigration agents to search, detain, subpoena, and administer oaths.

Section 1226 is entitled "Apprehension and detention of aliens." Subsection (a) provides general authority to the Attorney General to issue warrants for the arrest and detention of aliens pending a decision on their removability. It also allows the Attorney General to continue the detention of the arrested alien or release them on bond or parole, with certain exceptions. *Id*. Section 1226(b) provides for the revocation of bond or parole granted under subsection (a).

Section 1226(c) mandates that the Attorney General take into custody aliens who are inadmissible or subject to removal for a variety of criminal offenses, many of which are outlined in other sections of the INA. This part of the statute was amended within the last year by the Laken Riley Act to specifically require the detention of aliens arrested for certain crimes: burglary, theft, larceny, shoplifting, assault of a law enforcement officer, or any crime that results in death or serious bodily injury.[3] *See* 8 U.S.C. §1226(c)(1)(E)(ii). Finally, under Section 1226(c)(4), aliens who are subject to mandatory detention may only be paroled or released for witness protection purposes.

Against this statutory backdrop, the government contends that Espinoza Hernandez is lawfully detained under Section 1225. The government points out that Espinoza Hernandez was arrested while present in the United States and not lawfully admitted, making him an "applicant for admission" under Section 1225(a). Based on this fact, the government maintains that Section 1225(b) mandates Espinoza Hernandez's detention because no examining immigration officer has

---

[3] The Laken Riley Act also amended Section 1225(b) to authorize State Attorney General enforcement powers. *See* 8 U.S.C. §1225(b)(3).

determined that he is "clearly and beyond a doubt entitled to be admitted." *See Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018) (explaining that Sections 1225(b)(1) and (b)(2) "mandate detention of aliens throughout the completion of applicable proceedings and not just until the moment the proceedings begin."). The government acknowledges that Section 1226(a) provides for the release on bond of a foreign national who was previously lawfully admitted to the United States and later subjected to removal proceedings, but contends this provision applies only if the person is not an "applicant for admission" and thus governed by Section 1225(b). (ECF No. 12 at 7.) As explained in detail in *Cirrus Rojas*, the government's construction is consistent with the statutory text, which supports its decision to detain Espinoza Hernandez.

Espinoza Hernandez asks the Court to conclude that his detention is unlawful and offers a number of justifications for his position. Most of his arguments do not address the statutory language or the Court's construction of that language as set forth above and in *Cirrus Rojas*. Indeed, his own construction finds almost no support in the wording of Sections 1225 or 1226.

Espinoza Hernandez first argues that the Supreme Court's decision in *Jennings* precludes the government's construction. This argument overstates the Court's actual holding, which had nothing to say about the issues present here. In *Jennings*, the Court rejected and reversed lower court rulings that had interpreted the INA to require periodic bond hearings for aliens who are already adjudicated removable and are awaiting removal. 583 U.S. at 292, 314. Before addressing that ultimate issue, the Court discussed Sections 1225 and 1226 and their general application to the detention of aliens arriving at the border and aliens apprehended within the United States. *Id*. at 297–98. Nothing in this general background discussion addresses the statutory issue confronting this Court. And certainly, the Supreme Court's holding in *Jennings* does not touch either party's position here. At most, this general discussion constitutes background or dicta.

Like the petitioner in *Cirrus Rojas*, Espinoza Hernandez also tallies the number of district courts that have rejected the government's statutory construction argument. He points out that most courts have granted requests for habeas relief in these circumstances because the current administration's construction of Section 1225 and 1226 is "completely new," inconsistent with prior agency practice, and "appears politically motivated." (ECF No. 14 at 4–5.) Absent from these contentions is any reference to the statutory text or, more specifically, a satisfactory explanation of how Espinoza Hernandez falls outside the definition of "applicant for admission" in Section 1225(a). While the Court acknowledges that a strong majority of other courts have

rejected the government's reading of these statutes, Espinoza Hernandez has not pointed to compelling analysis in any of the competing decisions that supports his own construction. Nor has he identified any discussion in those cases that demonstrates an error in this Court's statutory analysis. At the November 13, 2025 status conference, the Court specifically invited Espinoza Hernandez to do so, but he has not.

While Espinoza Hernandez states that the majority of courts have relied upon an interpretation of "the INA as a whole," an unquestionably appropriate approach, he does not explain how doing so results in the construction he offers. This Court has reviewed the statutory text as a whole, including all parts of the INA to which the parties refer, and does not find any statutory basis to exclude Espinoza Hernandez from the definition of "applicant for admission" in Section 1225(a)(1). In the absence of specifics that address the statutory language, the Court remains unpersuaded by these other decisions. Moreover, the Court notes that last month a well-respected judge in this district likewise rejected the majority approach and followed *Cirrus Rojas*. *See Ugarte-Arenas v. Olson*, No. 25-C-1721, 2025 WL 3514451 (E.D. Wis. Dec. 8, 2025).

The only specific statutory argument Espinoza Hernandez makes is based on Section 1225(b)(2)'s reference to aliens who are "seeking admission" in addition to the words "applicant for admission." He is correct that the statutory text includes both phrases and provides that "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that an *alien seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under" 8 U.S.C. §1229a. 8 U.S.C. §1225(b)(2)(A) (emphasis added). Espinoza Hernandez argues that the phrase "seeking admission" in addition to "applicant for admission" *must* mean that Section 1225(b)(2) does not apply to all applicants for admission. Even if this were true, he fails to explain how the use of these words supports his position that Section 1225(b)(2) only applies to aliens intercepted at the border. The language says nothing about the border or the location of the alien's arrest. This makes Espinoza Hernandez's position a significant jump in logic. The Court can find nothing in the wording or in the overall INA that suggests an intent to limit application of Section 1225(b)(2) to aliens seized at the border. The petitioner in *Cirrus Rojas* made the same argument and the Court continues to find it unpersuasive. In the Court's view, read most naturally, this language simply reflects another way of saying aliens seeking admission, i.e. applicants for admission.

Moreover, even if Espinoza Hernandez was correct that the phrase "seeking admission" in addition to "applicant for admission" means that Section 1225(b)(2) does not apply to all applicants for admission, this does not help him. The record confirms that Espinoza Hernandez is both an applicant for admission and is seeking admission. It is undisputed that he has a pending application for asylum in the immigration court. By asking for asylum, Espinoza Hernandez is literally seeking admission—authorization to remain lawfully in this country. Section 1101(a)(13)(A) defines the terms "admission" and "admitted" to mean "with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. §1101(a)(13)(A). That is precisely what Espinoza Hernandez is seeking with his asylum petition. Indeed, one suspects that upon apprehension many unadmitted aliens promptly seek admission and permission to stay; their alternative is to elect to remove themselves voluntarily. This undercuts the logic of Espinoza Hernandez's argument. He cannot avoid this conclusion with the uncontroversial contention that one can apply for asylum while already lawfully present in the United States. That fact does not alter his own circumstances. There is no question that Espinoza is both an "alien present in the United States who has not been admitted" within the meaning of Section 1225(a)(1) and, due to his asylum petition, has requested authorization to remain here and is thus also "seeking admission" within the plain terms of Section 1225(b)(2).

After the parties had completed their briefing, on December 11, 2025, a Seventh Circuit motions panel issued a decision in *Castanon-Nava v. U.S. Department of Homeland Security*, 161 F.4th 1048 (7th Cir. 2025), that touches on these issues. The panel granted in part and denied in part a motion by the government to stay a district court class action ruling enforcing a consent decree pending appeal. As part of its analysis, the panel addressed the government's likelihood of success on a number of issues, including whether Section 1225(b)(2)(A) "covers any noncitizen who is unlawfully already in the United States as well as those who present themselves at its borders." *Id.* at 1060. A majority of the panel concluded the government did not have a likelihood of success on the merits on this issue, preliminarily agreeing with Espinoza Hernandez's position here that an "applicant for admission" must mean something different that an alien "seeking admission." *Id*. at 1061. The majority agreed that the government's position had "superficial appeal" but concluded the plaintiffs had the better argument "on the current record" then before it. *Id.*

As is the case with the number of district court decisions adopting Espinoza Hernandez's interpretation, the panel decision in *Castanon-Nava* gives this Court pause. But it is a preliminary decision and not binding precedent. *See Johnson v. Burken*, 930 F.2d 1202, 1205 (7th Cir. 1991) ("Decisions by motions panels are summary in character, made often on a scanty record, and not entitle to the weight of a decision made after plenary submission."). Moreover, this Court has a different record before it. As explained above, even if some subset of "applicants for admission" are not also "alien[s] seeking admission," the record here confirms that the statute still applies to Espinoza Hernandez.

In his reply, Espinoza Hernandez strays even further from the statutory text and tries to support his construction of Sections 1225 and 1226 by referencing other pieces of legislation that do not appear to have anything to do with the issues here. First, Espinoza Hernandez cites 8 U.S.C. §1255(i), enacted in 1994 and amended in 2000 by The Legal Immigration Family Equity (LIFE) Act. (ECF No. 14 at 7.) The LIFE Act permits certain foreign nationals who entered the United States without inspection to apply to adjust their status to permanent resident if the person (1) is a beneficiary of an immigrant visa petition under 8 U.S.C. §1154 filed on or before April 30, 2001, (2) was physically present in the United States on December 21, 2000, and (3) pays a $1,000 fee. 8 U.S.C. §1255(i). Nothing in the text of the LIFE Act as originally enacted or later amended refers to or otherwise relates to the detention provisions in Sections 1225 or 1226. It is a different piece of legislation enacted at a different time to address an entirely different issue. The LIFE Act does not mention "applicants for admission" within the meaning of Section 1225(a)(1) or suggest that Section 1225(b)(2) applies, as Espinoza Hernandez maintains, only to aliens detained at the border. Nor does the statute's amnesty program have any application to Espinoza Hernandez, who does not appear to fall within any of its requirements.

Espinoza Hernandez also cites the Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA) and argues that its "age-out" provision requires his release on bond. (ECF No. 14 at 10–11.) The TVPRA makes the ORR within the Department of Health and Human Services (HHS) responsible for unaccompanied minors. 8 U.S.C. §1232(b)(1). It also requires HHS to "promptly" place unaccompanied minors "in the least restrictive setting that is in the best interest of the child." 8 U.S.C. §1232(c)(2)(A). Unaccompanied minors who are in ORR custody when they reach 18 years of age must be transferred to the custody specified by DHS (generally for these purposes, ICE).

> If a minor described in subparagraph (A) reaches 18 years of age and is transferred to the custody of the Secretary of Homeland Security, the Secretary shall consider placement in the least restrictive setting available after taking into account the alien's danger to self, danger to the community, and risk of flight. Such aliens shall be eligible to participate in alternative[s] to detention programs, utilizing a continuum of alternatives based on the alien's need for supervision, which may include placement of the alien with an individual or an organizational sponsor, or in a supervised group home.

8 U.S.C. §1232(c)(2)(B); *see Flores v. Sessions*, 862 F.3d 863, 873 (9th Cir. 2017) (foreign national "remained in [a juvenile facility specified by ORR] until his eighteenth birthday, at which point he was transferred to [ICE] custody and moved to an adult jail."). Espinoza Hernandez, however, was not in ORR's custody—he was released to the custody of a family member and never transferred to the custody of DHS. Accordingly, the statutory requirement that the government consider the least restrictive option would not apply to him. *See Jose L.P. v. Whitaker*, 431 F. Supp. 3d 540, 550 (D.N.J. 2019) (determining that the petitioner ceased to be an unaccompanied minor once he was placed in the care and custody of his father and further determining that he was not transferred to the custody' of DHS). Moreover, it appears that Espinoza Hernandez was nineteen years old when he applied for asylum and any protections of the TVPRA were no longer applicable because he had "aged out." *See Harmon v. Holder*, 758 F.3d 728, 735 (6th Cir. 2014) (the TVPRA's protections only apply where an unaccompanied child applies for asylum prior to the child's eighteenth birthday); *Matter of M-A-C-O-*, 27 I& N Dec. 477, 480, 2018 WL 5128111, at *3 (B.I.A. 2018) (holding that even when a foreign national has previously been determined to be an unaccompanied child, if the asylum petition was not filed with the Asylum Office before the child's eighteenth birthday, the immigration judge, not the USCIS, has initial jurisdiction over the application).

Finally, Espinoza Hernandez argues that the Court should require the government to follow—and bar them from changing—the prior government practice of permitting unadmitted foreign nationals living in the United States to seek release on bond under 8 U.S.C. §1226(a)(2). He cites no law to support this requested exercise of judicial authority. As this Court noted in *Cirrus Rojas*, "[p]rior administrations' generous interpretations of these laws, while relevant to understanding that text, do not and cannot rewrite it." 2025 WL 3033967, at *9. While Espinoza Hernandez asks the Court to hold the government estopped from adopting a new, different

interpretation given the long history of its past practice, there can be no estoppel against the federal government. *Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 419–20 (1990); *see also Guiterrez v. Gonzales*, 458 F.3d 688, 691 (7th Cir. 2006).

II. **Espinoza Hernandez's Detention Does Not Violate the Due Process Clause.**

Espinoza Hernandez's final claim is that his detention violates his due process rights under the Fifth Amendment. (ECF No. 1 at ¶¶67–70.) The Court summarized this issue in *Cirrus Rojas*:

> Given the caselaw and the well-defined procedures governing (and limiting) Cirrus Rojas's detention, the Court rejects his due process challenge. Consistent with *Zadvydas* and *Denmore* [*v. Kim,* 538 U.S. 510 (2003)], Cirrus Rojas has a recognizable liberty interest in connection with his pre-removal detention. But as *Denmore* held, and *Parra* explains, that liberty interest is limited. Cirrus Rojas is an alien who was found in the United States without authorization and is subject to removal proceedings. Consistent with federal law, he is being provided with the opportunity to oppose removal and using that opportunity to pursue an asylum claim. As explained in *Parra*, Cirrus Rojas's liberty interest is limited, and he has the key to his release in his own pocket; he can choose to accept removal to his homeland under Section 1229a.

2025 WL 3033967, at *12 (citing *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999)). Espinoza Hernandez is receiving the process to which he is due through his removal proceedings under 8 U.S.C. §1229a(b)(4). *See Denmore*, 538 U.S. at 523 ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings. At the same time, however, this Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." (cleaned up)). Section 1225(b)(2) does not afford Espinoza Hernandez the ability to obtain release on bond and the Due Process Clause does not either. *See Jennings*, 583 U.S. at 298 ("Spotting a constitutional issue does not give a court the authority to rewrite a statute as it pleases.). That Espinoza Hernandez wants different procedures does not mean the existing framework violates due process.

Finally, the government's interest in maintaining the current procedures is significant. As the Seventh Circuit recognized in *Parra*, "the United States has a powerful interest in maintaining the detention in order to ensure that removal actually occurs." 172 F.3d at 958. Espinoza Hernandez has not established that his detention exceeds that interest.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Petition for Writ of Habeas Corpus, ECF No. 1, is **DENIED** and this case is **DISMISSED with prejudice**. The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on January 21, 2026.

                                                  s/ *Brett H. Ludwig*
                                                  BRETT H. LUDWIG
                                                  United States District Judge